Good morning your honors. May it please the court. My name is Loren Cochran and I represent the defendant appellants James and Lila Curtis individually and on behalf of their minor son SC. I would like to use ten minutes of my time and reserve five minutes for rebuttal. Let me tell you the hump I have to begin with. Everybody agrees that the child was uninsured, right? Correct. And the policy contains language that says it excludes coverage for bodily injury arising out of sexual molestation inflicted by an insured person. Now what? Well then we look at the rest of what is written in that policy exclusion. Why? Because it's in Washington State we look at all of the words that are written in an insurance policy and each word is presumed to have some sort of meaning. So in this particular case we've got the continuing off where your honor left direction abuse inflicted upon any person by or at the direction of an insured person, an employee of an insured person or any other person involved in any capacity in the home daycare business. Why have the word other? This is the main point. I can't think of every possibility so I'm going to use any other. But your honor if you were to do that you wouldn't include the next part of it involved in any capacity in the home daycare business. You would simply stop with any other person. But insured person under the policy is you and if a resident of your household any relative or any dependent person in your care. That's correct your honor. So it outlines there what the insured person is. So then that doesn't have to be involved in the daycare business. Any relative is out if a resident of the household. Any dependent person is out if a resident of the household. So the insured person has nothing to do with the home daycare center business. Then it says an employee of an insured person. They don't have to be involved in the home daycare business. There's nothing. The insured person is not even in that part of the coverage or the endorsement. It's absolutely defined someplace else. And it says you and if a resident of your household doesn't have anything to do with home daycare center business. And that definition any relative any dependent care person or dependent person. So I'm having a tough time even given what you want me to believe that any capacity in the home daycare business has any relationship to about any other person. And respectfully your honor I would point out the fact that this is a home daycare endorsement. So this is something that is paid for specifically by an individual who's going to run a home daycare aside from their home coverage. So this is an extra premium that they're paying. And so the idea being I am running a home daycare business. So that is your you arguing that the insured person if they weren't in the home daycare business would not be employed reinsured. They wouldn't even be eligible for the premium your honor. It's a home daycare endorsement. But I understand what you're saying about the endorsement. But when I read the word insured person people are out whether they're involved in home daycare or not. But they can they are either in or they're out. If they're a resident of the household they are a relative. They're out. They don't have to be involved in the home daycare business. If they're any dependent care in our any dependent person in the care they're in or they're out. It'd be depending on whether they're a resident of the household. So then you want me to put any capacity in the home daycare business on the top of that. That's correct your honor. Otherwise the word other becomes completely superfluous. There's no reason to have the word other and then included with the words any other person involved in any capacity in the home daycare business. Why do we even have to get to that though in this case? Isn't it clear enough in the earlier portion talking about members of the family in the household? Isn't other in this case irrelevant? No your honor. This is a specific premium that a home daycare provider pays for. I'm sorry. I'm losing the relevance of that. Sure they have a policy. But the reality is all policies have definitions. That's why you all are so busy with your work is because insurance policies are written in ways that are occasionally confusing. I'm not sure this one is because it seems right off the bat that JJ is that what we're calling her is a relative. She's an insured person for purposes of this. Is she not? She is an insured person but she's not an insured person involved in any capacity in the actual home daycare business. Where is the insured person definition? Isn't it specifically defined in the policy regardless of whether the home daycare endorsement is in or not? Well, respectfully your honor, I wouldn't say regardless because this exclusion is specific to this home daycare endorsement. So if this home daycare endorsement doesn't exist in other places. Is the insured person place where we find that in the same place as where we find the excluded person for involved in the capacity for home daycare business? Don't I have to go to a different section to find out what insured person means? You do, your honor. And when I go to that different person, it says nothing about home daycare business. It only says a resident or you. Those are the insured. Which I would argue is even more a reason to look at the specific language that is in this endorsement. I guess. I understand your argument. I'm just having a tough time. Are you saying this is an ambiguous policy? It can be read at least two ways. Absolutely, your honor. If you're saying it's ambiguous, so then what? Then it needs to be interpreted towards coverage, that the insured should actually get what they paid for. And if you will, your honors, this would not be an unusual situation in a daycare setting. You could have a child with another child and with a home daycare set up. I would argue that it is absolutely reasonable to anticipate that a home daycare provider may have his or her minor children there. And the idea is that children will play doctor. Children may have sexual exposure to each other akin to what is in the record here. We've got a young girl who's 12 to 13 years old who in her testimony says that she exposed herself, that she pulled down her bathing suit when she was in a kid's pool that was just outside in the patio. There's some conflicting testimony as to whether it was called the wee-wee game where she urinated on S.C.'s penis and then subsequently may or may not have actually grabbed his penis and may have guided it towards her vagina. But more specifically, what we're looking at is something that you can imagine would be contemplated within the coverage of a home daycare endorsement. If you're paying for that, that may be one of the risks that an individual would be contracting for. Is that the way we interpret insurance policies? I thought we interpreted them based upon the words of the policy. We do in an average person's reasonable interpretation of that, your honor. Really? Well, that's my understanding of it, that in Washington we look at how the average Joe, the average insurance buyer, would go ahead and read a specific piece of policy. So that's your understanding of Washington law. So if I go out on the street and I have this policy and I say, excuse me, madam, would you read this? And then if she's average, whatever that means, whatever she says it means, that's what we're bound by. Is that your view of Washington law? No. Respectfully, your honor, I think that's overly simplistic. But the idea is you don't have to be an attorney to understand the specific language that's in there. So when you're actually contracting, when you're going to your, in this case, all-state insurance. Isn't it being an attorney that makes it complicated? I would agree with that, your honor. It often does. Okay. So if you lose on that, or let's say you win on that, what about the intentional and criminal acts exclusion? Well, in this case, looking back at the specific facts that are on the record, what we would be looking at is, is this actually, number one, sexual molestation, which is what it's specifically contracted for in that particular exclusion, as opposed to like the Karoff case where it says any actual or alleged injury, they define sexual molestation as sexual misconduct. There's a much more definite definition. Aren't we really looking, the harm to the son was intended or reasonably expected to result from, second, the intentional or criminal acts, and third, an insured person? That's what we've got to look at here. That's what all-state has to show, right? Correct. So let's look at the harm to the person intended or reasonably intended. It seems to me we're stuck with what Oregon or what the law of the state is. A person who sexually abuses intends to injure. Acts of child abuse do not constitute an accident. There's where we are. But respectfully, Your Honor, we don't know. This was a 12-year-old girl at the time. Well, it doesn't matter what she thought or she doesn't. If she has done acts under what this law suggests, she gets her actual subjective intent is not there at all. She's automatically involved. But, again, that requires a factual determination as to what actually happened. Did she simply pull down her bathing suit and expose her pubic hair? Was there something more to it? Why do you have to go to actual subjective intent? It seems to me like the law is pretty clear. If there is the abuse, you don't have to worry about her individual thought or her non-individual thought. It's automatically intention is presumed. But what is the abuse? That's what needs to be discovered through a factual analysis. Well, that's number two, the intentional or criminal acts. So we got the intentional or, I mean, we got harm intended because there we have the situation. So then we go to was there an intentional or criminal act? JJ was convicted of indecent exposure. Isn't that an intentional or criminal act? Not on the record that we're looking at here. I mean, we've got, I'm sorry. Well, indecent exposure is a criminal act. Well, she says that she did it because she was on ADT. She pled guilty. I recognize that, Your Honor, but the standard in a juvenile hearing is much different than that would be in an adult court. And we have specific case law in Washington that says you cannot necessarily presume for the civil setting that a criminal plea will necessarily convert to the exact same thing in the civil setting. I want to go back to my original hump because you haven't gotten me yet. In the policy, in the endorsement, it says, we don't do bodily injury or property damage arousing out of sexual molestation, corporal punishment, or physical or mental abuse inflicted on any person by or at the direction of an insured person, comma, an employee of an insured person, or any other person involved in any capacity in the home care business. Now, what's ambiguous about that? I don't see it. Well, you're right. I tried diagramming the sentence. It didn't make perfect sense to me. Well, if the insured person, if you simply wanted to say that it didn't matter, an insured person, an employee of an insured person, or any other person, wouldn't you stop there? No. No, you'd say any capacity whatsoever, nobody, no how, we don't do physical abuse, we don't do sexual molestation, we don't do mental abuse, we don't do corporal punishment, period. If I may, Your Honor, take a look at the second one, an employee of an insured person. Why would you have that in there if that wasn't specific to being involved in any capacity in the home day care business? You don't even have to be in the day care business. If you're an employee of an insured person and you're a sexual molestation, you are going to be excluded. There's nothing suggesting it's got to be in the day care business. But, Your Honor, what would be the purpose of having an insured person who had a buddy that worked at Boeing and have a specific provision in there? Not a buddy, an employee. Well, an employee that worked at Boeing. Or buying a coverage that excludes coverage for an employee. And I would argue that it makes more sense to say an employee of an insured person involved in any capacity in the home day care business. What is another person involved in the capacity if they're not an employee? No, no, it isn't. Think about it. You say an employee of an insured person or any other person. Who would be the other person involved in the capacity of the home day care business if it weren't the employee? It wouldn't necessarily have to be someone defined. Who is it? It could be a volunteer, Your Honor. It could be someone that's not being paid and wouldn't normally be thought of as an employee. Okay. I think you're out of time. Let's hear from Mr. Foley, I believe. Thank you. Good morning, Your Honor. May it please the Court, my name is Doug Foley. I represent Allstate. I don't think there's going to be a clearer issue for you today than this one. If we look at the policy, and I think the comments of Judge Walter are just absolutely spot on, a simple read-through walk through the policy clearly gives us the answer. We don't really have to resort to rules of construction. We don't have to read a lot of cases. The policy is clear and it reads the way it reads. Like any insurance contract, this is constructed from the basics of, A, it has to be an occurrence, which is defined as an accident in the policy. And I'm going to go right to the SCR, which is our supplemental record, and talks about what an occurrence is, what an accident is, how that's the foundation for coverage. Then you have to be an insured person. They need this person to be insured in this case in order to try to tap coverage. So no one's going to argue that JJ was not an insured person for all purposes, whether it's an exclusion or a coverage provision, whether it's a definition of term. She is inside the policy. The next question is, is there going to be potential coverage even before we get to an exclusion? If you look at the grant of coverage, it's by an endorsement. An endorsement gets stuck inside the policy. And the way it reads in terms of the endorsement is that there is sexual molestation coverage, but not for anybody who is, A, an insured person, B, an employee, and C, then any other person who is operating inside the daycare operation. So clearly, just walking to the policy, the coverage itself isn't triggered, which is allowed by the endorsement. But it's also excluded by the insurance contract on the intentional or criminal acts exclusion. It's a separate exclusion that still applies because this coverage gets dropped inside the policy. It operates within the policy. It's a part of a policy. Well, and as I understand it, the definition of the insured person is inside the policy. That is correct. It's SCR 34, and you read it exactly correct, Your Honor. It says exactly what you said. It's any relative, any dependent person in your care, any resident of your household. And that would have to be JJ in this particular case. So that would mean that all of those people do get insurance, and then by adding this exclusion or adding the daycare endorsement, they are saying that if those people are involved in sexual molestation, they're excluded. They didn't re, as I understand it, define insured person. They didn't redefine employee of the insured person. All they did was add to it any other person. That is absolutely correct, Your Honor. And as far as how this operates as in any insurance contract with an endorsement, reading it all together, the intentional and criminal acts exclusion still applies. In fact, you could have just had a daycare endorsement saying nothing about sexual molestation. And if you had an intentional and criminal acts exclusion that's applicable to any insured or to uninsured, there would still be no coverage for that separate reason. But because this is a hot topic, and there has been a lot of problems with home daycare, this has been written to make it absolutely crystal clear that there can be no coverage because sexual molestation coverage is not granted under this endorsement itself, and it's also excluded independently by the policy by the intentional acts exclusion and the criminal acts exclusion. They're separate. These definitions of who does not get this coverage, who is not afforded this coverage, are disjunctive, just like Judge Walter stated. It's an insured person. It is an employee, then it's any other person. It's clearly disjunctive. And the strain and artificial reading that's being offered to you is not how we construe insurance contracts. We don't imagine that contracts say something different they say on the print of the policy. We don't try to construe them or deconstruct them to the point where we get different readings from what they say. And that's exactly what's being offered to you in terms of argument before we turn to case law. And then, as I understand it, because of the joint obligations clause, not only is exclusion of the insured being the minor, but the exclusion for the parent is also the insured. Because, of course, they're going to sue the minor and they're going to sue the parent, and so with the joint obligations clause, then neither can get coverage. And that is true. In Allstate v. Rainer, our Supreme Court in the state of Washington specifically said that that's how that operates. The joint obligation clause literally fuses any insured into, in terms of that person's conduct, into the conduct of all insureds. And that's exactly how the case reads. In Allstate v. Rainer, it's a tragic case. It's my case. We had a neighbor that went across a property line, got mad at the neighbor, and fired a bunch of shots, killed some children, killed the people who lived next door. It was a horrible, tragic case. They sued, of course, the wife and the estate of the person who did the shooting shot himself. It was a horrible case. They sued the wife, alleging negligent supervision of the husband. And among other reasons for saying, no, maybe there's no cause of action for that. We don't have to even reach that issue. The finding of the court was that, look, we have a joint obligations clause, and there was a finding of sanity that the fellow was actually sane. We actually took the deposition of the psychiatrist in that case who had treated the fellow, but he was not insane. He didn't flunk the McNaughton's test. And his acts were intentional and criminal, and they have to be either or, in terms of the operation of the exclusion. And the court found that because there was intentional or, and certainly they said there was a criminal act, too, and the murders that took place by a sane person in that particular instance, that the conduct of him, the husband, his conduct was the conduct of the wife for the purpose of all insurance under the policy. That's how the joint obligations clause operates. That's SCR 36 in our supplemental record. You know, there's a lot of cases we can discuss. I'm not going to waste your time, unless you have any further questions about how this policy reads. I think we resort to case law when we're not quite sure, and I don't even think we need to. The Norgaard case is pretty instructive because it's almost a word-for-word exclusion, very similar facts. The court had no problem in finding, in that case, in Norgaard, I just say incidentally and I'll be done here, they added a severability clause. They added an anti-joint obligations clause where they said that if you're insured, you have like, it's like your own insurance relationship when it's severable as opposed to joint, which is this clause. And they said even though there's a severability argument that each individual is taken differently, this sexual molestation coverage, which was essentially word-for-word in this policy, provides no coverage because the husband who did the bad things to the child in the Norgaard case was uninsured, despite the severability clause saying that you treat these people differently, like they have their own, excuse me, their own separate insurance, which is the anti-take-on-the-reigner case which says you fuse them all together. But even where they're severable, the court said this exclusion or this lack of operation is really what it is, so the sexual molestation coverage didn't provide any coverage in that case with a severability clause. And as I said, we can tease this case law, you know, to death, but it just doesn't make a difference. All we have to do is walk through the policy. And then lastly, I'd like to say, I'd like to welcome Judge Walter again. I used to live in New Orleans for a year. Great town. I've got great memories and nice to make your acquaintance. Did you move out because of Katrina? No, it was before Katrina. It was about 1972 through three I was down there for a year with some friends. Great times. Very good. We thank you both for your argument. The case just argued is submitted and the court stands in recess for the day.
judges: Walter, Smith, Smith